IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PACIFIC ETHANOL HOLDING CO. LLC, et al.,<br><br>Debtors. | Case No. 09-11713 (KG)<br><br>Chapter 11<br><br>Jointly Administered |
| PACIFIC ETHANOL HOLDING CO. LLC,<br>PACIFIC ETHANOL MADERA LLC,<br>PACIFIC ETHANOL COLUMBIA, LLC,<br>PACIFIC ETHANOL STOCKTON LLC, and<br>PACIFIC ETHANOL MAGIC VALLEY, LLC,<br><br>Plaintiffs,<br>-against-<br><br>Delta-T Corporation,<br>Defendant. | Adv. Pro. No. _____ |

## ADVERSARY PROCEEDING COMPLAINT

Plaintiffs, (i) Pacific Ethanol Holding Co. LLC, (ii) Pacific Ethanol Madera LLC, (iii) Pacific Ethanol Columbia, LLC, (iv) Pacific Ethanol Stockton LLC, and (v) Pacific Ethanol Magic Valley, LLC (collectively, the "Debtors"), by and through their lead and local counsel, Cooley Godward Kronish LLP and Potter Anderson & Corroon LLP, as and for their complaint against defendant, Delta-T Corporation (the "Delta-T"), alleges upon knowledge with respect to their own acts and upon information and belief with respect to the acts of others as follows:

### I.

### PRELIMINARY STATEMENT

1. The Debtors and Delta-T are parties to a number of agreements pursuant to which the Debtors retained Delta-T to assist them in the construction of certain ethanol plants.

Subsequently, a number of disputes between the parties and other contractors retained by Delta-T arose. Prior to the commencement of this bankruptcy case, Delta-T instituted several actions across the country against certain of the Debtors and their affiliates for breach of contract and indemnification.

2. Since the commencement of this bankruptcy case, Delta-T has, among other things, instituted suit against the Debtors' parent, Pacific Ethanol, Inc. (the "PEI"), alleging substantially similar causes of action against PEI as those set forth in the prepetition actions commenced by Delta-T against the Debtors.

3. Through this adversary proceeding the Debtors request that this Court issue an injunction staying the litigations described in detail below. Absent that injunction, Delta-T will continue to aggressively pursue its claims against PEI, which will frustrate and impair the Debtors' reorganization efforts and collaterally estop the Debtors from raising certain defenses and counter-claims against Delta-T.

4. Through this adversary proceeding the Debtors also seek damages for Delta-T's breach of contract, breach of warranty and professional negligence resulting in faulty or deficient engineering work at the Debtors' ethanol plants in Burley, Idaho, and Stockton, California.

## II.

## JURISDICTION AND VENUE

5. This adversary proceeding arises under and relates to the chapter 11 cases of the Debtors pending in this Court.

6. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157, §§ 105, 362 and 541 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 7001(7), 7001(9), 7065 and 9014.

7. This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

8. Venue is properly located in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## GENERAL BACKGROUND

9. On May 17, 2009, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Clerk of this Court.

10. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

## IV.

## THE PARTIES

11. Pacific Ethanol Holding Co. LLC, is a Delaware limited liability company and an indirect, wholly-owned subsidiary of PEI.

12. Pacific Ethanol Madera LLC, is a Delaware limited liability company and an indirect, wholly-owned subsidiary of PEI.

13. Pacific Ethanol Columbia, LLC, is a Delaware limited liability company and an indirect, wholly-owned subsidiary of PEI.

14. Pacific Ethanol Stockton LLC, is a Delaware limited liability company and an indirect, wholly-owned subsidiary of PEI.

15. Pacific Ethanol Magic Valley, LLC, is a Delaware limited liability company and an indirect, wholly-owned subsidiary of PEI.

16. Delta-T is a Virginia corporation with its principal place of business in Williamsburg, Virginia.

## V.

## PEI'S ASSISTANCE WITH THE
## DEBTORS' REORGANIZATION EFFORTS

17. PEI is the manager of each of the Debtors pursuant to an Asset Management Agreement entered into on May 14, 2009 (the "Management Agreement").

18. Pursuant to the Management Agreement, PEI (i) disburses funds for the payrolls for the Debtors and is reimbursed by the Debtors and (ii) provides all management and administrative services for the Debtors.

19. The officers of PEI and the officers for each of the Debtors are identical.

20. The officers of PEI are currently involved in seeking to raise money to invest in the Debtors' primary assets, their respective ethanol plants.

21. PEI is currently seeking financing to (a) fund the Debtors' plan of reorganization or (b) purchase the Debtors' ethanol plant assets.

22. The officers of PEI are in the process of assisting the Debtors in formulating a plan of reorganization.

## VI.

## THE VIRGINIA LITIGATION

23. In or about June 19, 2009, Delta-T filed an adversary proceeding styled "*Delta-T Corporation v. Pacific Ethanol, Incorporated*" in the United States District Court for the Eastern District of Virginia (the "Virginia Court"), Case No. 3:09CV388 (JRS) (the "Virginia Litigation"). A copy of the complaint filed by Delta-T in the Virginia Litigation (the "Virginia Complaint") is annexed hereto as **Exhibit A.**

24. PEI is the sole defendant in the Virginia Litigation.

25. Prior to instituting the Virginia Action, Delta-T had commenced an action in the

Virginia Court against PEI and certain of its subsidiaries, including certain of the Debtors. However, the Virginia Court dismissed Delta-T's complaint and ordered the parties to arbitration consistent with the parties' written agreements.

26. In the Virginia Litigation, Delta-T alleges, *inter alia*:

   (i) that it entered into a series of Engineering, Procurement and Technology Licensing Agreements (the "Agreements") with PEI relating to the construction of certain ethanol plants;

   (ii) the Agreements obligated PEI to pay Delta-T certain licensing fees for the right to use certain technologies and processes;

   (iii) PEI assigned "all of its rights, interests, duties and obligations" under the Agreements to PEI's affiliates and subsidiaries, including certain of the Debtors;

   (iv) payments were not made under the Agreements, despite a commitment to make such payments;

   (v) an oral contract whereby PEI agreed to indemnify Delta-T or Delta-T's vendors for "any and all costs, fees, legal fees, and related expenses Delta-T was forced to or did incur, or will continue to incur, as a result of subcontractors, vendors, suppliers, materialmen, or other similar entities pursuing Delta-T for payments owed on invoices not paid...."; and

   (vi) it has suffered damages as a result of PEI not honoring the purported oral contract to indemnify Delta-T.

27. In addition to the original purported agreements, Delta-T claims that it entered into a "Term Sheet" and a "Letter Agreement" related to the Agreements, which PEI also

purportedly breached.

28. In the Virginia Litigation, Delta-T further argues that PEI "has failed to fully participate in arbitration" because PEI has not paid its half of the arbitration deposit, which Delta-T claims is the reason "the arbitration process has stopped prior to the preliminary hearing with the arbitrator."

29. Based on the above allegations, Delta-T brings claims for breach of written, oral, and implied contract and indemnity against PEI in the Virginia Litigation.

## VII.

## THE AAA ARBITRATION

30. On January 22, 2009, in accordance with the order of the Virginia Court dismissing the previous complaint filed by Delta-T against certain of the Debtors, PEI, and Pacific Ethanol Imperial, LLC ("PE Imperial"), which is in a California state statutory non-judicial liquidation proceeding, Delta-T filed a demand for arbitration with the American Arbitration Association ("AAA Arbitration").

31. In the AAA Arbitration, Delta-T alleged essentially the same claims against certain of the Debtors and PEI as asserted in the Virginia Litigation.

32. By letter dated June 10, 2009, the American Arbitration Association notified the parties to the AAA Arbitration that the matter was "automatically stay[ed]" as a result of the filing of the chapter 11 petition by Debtors.

33. By letter dated June 19, 2009, Delta-T indicated its desire to continue the AAA Arbitration as to PEI despite the preclusive effect any arbitration award would have on the Debtors.

# VIII.

## THE MINNESOTA LITIGATION

34. On March 31, 2009, Delta-T and Bateman Litwin N.V., a foreign corporation, (the "Minnesota Third-Party Plaintiffs") filed a third-party complaint against PEI and one of its non-debtor subsidiaries, PE Imperial, in the United States District Court for the District of Minnesota, Case No. 08-CV-6284 JMR-FLN (the "Minnesota Litigation"). A copy of the complaint filed by the Minnesota Third-Party Plaintiffs (the "Minnesota Complaint") is annexed hereto as **Exhibit B.**

35. The Minnesota Complaint contains many of the factual allegations set forth in the Virginia Complaint.

36. The Minnesota Third-Party Plaintiffs allege that all rights, interests, duties and obligations" under a certain Engineering, Procurement and Technology License Agreement entered into by Delta-T and PEI were assigned to PE Imperial.

37. The Minnesota Third-Party Plaintiffs assert that PE Imperial executed two "Assignments" whereby Delta-T assigned all of its "rights, interests, and obligations under" two purchase orders submitted by Delta-T to Campbell-Sevey, Inc., plaintiff in the Minnesota litigation. PE Imperial purportedly also agreed to "indemnify, defend, and hold Delta-T harmless for any and all claims made by Campbell-Sevey relating to" the purchase orders.

38. Delta-T claims that it submitted the purchase orders to Campbell-Sevey presumably to complete its contractually required work on PE Imperial's ethanol plant in Calipatria, Imperial County, California, commonly known as the Brawley Plant.

39. The Minnesota Third-Party Plaintiffs assert that Bateman Litwin N.V. was an "intended beneficiary" of the two "Assignments and all additional agreements between PEI, PE

Imperial, and Delta-T."

40. The Minnesota Third-Party Plaintiffs further claim that PEI "agreed to guarantee and satisfy PE Imperial's obligations to Delta-T under the Assignments and all of PE Imperial's obligations" under the two purchase orders.

41. By virtue of the claims brought against the Minnesota Third-Party Plaintiffs by Campbell-Sevey related to the two purchase orders, the Minnesota Third-Party Plaintiffs assert claims for breach of contract and indemnification against PEI and PE Imperial.

## IX.

## THE CALIFORNIA LITIGATIONS

### A.  The OneSource Litigation

42. On March 18, 2009, Delta-T filed a cross-complaint against PEI and PE Imperial in the Superior Court of the State of California in and for the County of Imperial, Case No. ECU04388 (the "OneSource Litigation"). A copy of the cross-complaint filed by Delta-T in the OneSource Litigation (the "OneSource Complaint") is annexed hereto as **Exhibit C**.

43. None of the Debtors are a party to the OneSource Litigation.

44. The allegations by Delta-T in the OneSource Complaint are similar to those in the Minnesota Complaint. The OneSource Complaint incorporates by reference the underlying complaint against Delta-T, which was filed on or about May 3, 2008, by OneSource Distributors, LLC ("OneSource"), which seeks damages from Delta-T and others under the following causes of action: breach of contract, open book account, reasonable value, and foreclosure of mechanic's lien. OneSource is a vendor with which Delta-T contracted to do work at the Brawley plant.

45. In the OneSource Complaint, Delta-T asserts that PEI and PE Imperial are liable for the claims brought by OneSource and seeks recovery under the following causes of action:

implied indemnity, equitable indemnity, contribution, express indemnity/breach of contract. The OneSource Complaint also seeks declaratory relief.

### B. The GEA Westfalia Litigation

46. On April 6, 2009, Delta-T filed a cross-complaint against PEI and PE Imperial in the Superior Court of the State of California in and for the County of Imperial, Case No. ECU05023 (the "GEA Westfalia Litigation"). A copy of the cross-complaint in the GEA Westfalia Litigation filed by Delta-T (the "GEA Westfalia Complaint") is annexed hereto as **Exhibit D.**

47. None of the Debtors are a party to the GEA Westfalia Litigation.

48. The allegations by Delta-T in the GEA Westfalia Complaint are nearly identical to those in the OneSource Complaint. The GEA Westfalia Complaint again incorporates by reference the underlying complaint against Delta-T, which was filed on or about February 27, 2008, by GEA Westfalia Separator, Inc. ("GEA Westfalia"), and which seeks damages from Delta-T and others under the following causes of action: breach of contract, common counts for goods sold and delivered, open book account, and unjust enrichment. GEA Westfalia, too, is a vendor with which Delta-T contracted to do work at the Brawley plant.

49. As with the OneSource Complaint, the GEA Westfalia Complaint asserts that PEI and PE Imperial are liable for the claims brought by GEA Westfalia and seeks recovery under the following causes of action: implied indemnity, equitable indemnity, contribution, express indemnity/breach of contract. The GEA Westfalia Complaint also seeks declaratory relief.

## X.

## DELTA-T'S FAULTY WORK AT MAGIC VALLEY AND STOCKTON PLANTS

50. In or about 2006, Delta-T entered into a series of contracts with four of the

Debtors. The initial contracts were known as Engineering, Procurement and Technology License Agreements. A separate Engineering, Procurement and Technology License Agreement was entered into for each ethanol plant for which Delta-T was to perform its obligations. Specifically, a separate contract was entered into for ethanol plants in: (i) Burley, Idaho; (ii) Stockton, California; (iii) Imperial County, California; and (iv) Boardman, Oregon.

51. In addition to the initial Engineering, Procurement and Technology License Agreements, Delta-T and certain of the Debtors entered into other written contracts, such as term sheets and letter agreements, that governed the parties' relationship and obligations.

52. After Delta-T began its work on the four ethanol plants, it became readily apparent to the Debtor contract counterparties that Delta-T's performance was neither being performed in accordance with the parties' agreements nor consistent with industry standards. Specifically, Delta-T's conduct resulted in the failures and or necessary re-engineering of the essential liquefaction tanks, which combine and break down (or liquefy) critical elements for the production of ethanol, at both the Burley, Idaho, and Stockton, California, ethanol plants.

53. The Debtors estimate that the damages they suffered as a result of Delta-T's substandard performance in violation of the parties' agreement is in excess of $2,000,000.

## XI.

## SUMMARY OF RELIEF REQUESTED

54. Through this action, the Debtors seek an injunction pursuant to §§ 105 and 362 of the Bankruptcy Code staying (i) the Virginia Litigation and the AAA Arbitration until the later of (a) adjudication of the causes of action asserted by the Debtors against Delta-T set forth herein, (b) confirmation of any plan of reorganization in these bankruptcy cases, and (c) further order of this Court (ii) the Minnesota and California litigations until confirmation of any plan of

reorganization in these bankruptcy cases or further order of this Court.

55.    The Debtors also seek damages for Delta-T's breach of contract, breach of warranty, and professional negligence resulting in faulty or deficient engineering work at the ethanol plants in Burley, Idaho, and Stockton, California.

### FIRST CAUSE OF ACTION

**(All Debtors Against Delta-T for an Injunction Enjoining Delta-T's Prosecution of the Virginia Litigation and the AAA Arbitration)**

56.    The Debtors repeat and reallege the allegations set forth above.

57.    In the Virginia Litigation and the AAA Arbitration, Delta-T seeks to hold PEI liable for the alleged harm caused by the Debtors based on various legal remedies and/or claims.

58.    The allegations set forth in the Virginia Complaint and AAA Arbitration are inextricably intertwined with (i) Delta-T's claims against the Debtors and (ii) the Debtors' claims against Delta-T pursuant to this adversary proceeding.

59.    Adjudication of Delta-T's claims against PEI in the Virginia Litigation and the AAA Arbitration will have a preclusive effect on the Debtors' ability to (i) bring its counterclaims against Delta-T pursuant to this adversary proceeding and (ii) defend against the allegations made against them by Delta-T because those allegations mirror Delta-T's allegations against PEI.

60.    Based on the forgoing, any judgment against PEI in the Virginia Litigation and the AAA Arbitration will in effect be a judgment or finding against the Debtors.

61.    Furthermore, if the Virginia Litigation and the AAA Arbitration were permitted to proceed against PEI, the Debtors' reorganization process and efforts will be frustrated and significantly impaired because the Debtors' management would be forced to devote significant time and energy at this critical time in this bankruptcy case to defend PEI in those actions,

necessarily depriving management of time to devote to the Debtors' reorganization efforts.

62. In addition, permitting Delta-T's suit against PEI in the Virginia Litigation and the AAA Arbitration will have an adverse impact on the Debtors' ability to reorganize because PEI will (i) be diverted from seeking to obtain financing to (a) fund the Debtors' plan of reorganization or (b) purchase the Debtors' ethanol plant assets and (ii) spend significant resources defending the Delta-T claims instead of contributing to the Debtors' reorganization.

63. The Debtors have no adequate remedy at law.

64. The equities are in favor of the Debtors and their estates.

65. There is a controversy ripe for adjudication.

66. No prior request for the relief sought herein has been made to this or any other Court.

67. Based upon the forgoing, this Court should enter an order staying the Virginia Litigation and the AAA Arbitration until the later of (a) adjudication of the causes of action asserted by the Debtors against Delta-T set forth herein, (b) confirmation of any plan of reorganization in these bankruptcy cases, and (c) further order of this Court.

## SECOND CAUSE OF ACTION

### (All Debtors Against Delta-T for an Injunction Enjoining Delta-T's Prosecution of the Minnesota Litigation, OneSource Litigation and the GEA Westfalia Litigation)

68. The Debtors repeat and reallege the allegations set forth above.

69. The Debtors request that the Minnesota Litigation, OneSource Litigation and the GEA Westfalia Litigation be enjoined because absent that injunction, the Debtors' reorganization process and efforts will be frustrated and significantly impaired because the Debtors' management would be forced to devote significant time and energy at this critical time in this bankruptcy case to defend PEI in those actions, necessarily depriving management of time to

devote to the Debtors' reorganization efforts.

70. In addition, permitting Delta-T's suit against PEI in the Minnesota Litigation, OneSource Litigation and the GEA Westfalia Litigation will have an adverse impact on the Debtors' ability to reorganize because PEI will (i) be diverted from seeking to obtain financing to (a) fund the Debtors' plan of reorganization or (b) purchase the Debtors' ethanol plant assets and (ii) spend significant resources defending the proceedings instead of contributing to the Debtors' reorganization.

71. The Debtors have no adequate remedy at law.

72. The equities are in favor of the Debtors and their estates.

73. There is a controversy ripe for adjudication.

74. No prior request for the relief sought herein has been made to this or any other Court.

75. Based upon the forgoing, this Court should enter an order staying the Minnesota Litigation, OneSource Litigation and the GEA Westfalia Litigation until confirmation of any plan of reorganization in these bankruptcy cases or further order of this Court.

### THIRD CAUSE OF ACTION

**(Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC
Breach of Contract Against Delta-T)**

76. The Debtors repeat and reallege the allegations set forth above.

77. Delta-T, on the one hand, and Pacific Ethanol Stockton, LLC, and Pacific Ethanol Magic Valley, LLC, on the other hand, entered into binding and valid contracts.

78. Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC fully performed their obligations under the contracts or were otherwise excused from performance.

79. Delta-T failed to perform under the terms of the contracts by providing faulty or

deficient engineering work at the ethanol plants in (i) Burley, Idaho, and (ii) Stockton, California.

80. By its deficient performance, Delta-T created significant additional costs to Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC.

81. As a direct result of Delta-T's breach of contract, Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC have suffered damages of not less than $2,000,000, with the exact amount to be proven at trial.

## FOURTH CAUSE OF ACTION

**(Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC
Breach of Warranty Against Delta-T)**

82. The Debtors repeat and reallege the allegations set forth above.

83. Delta-T, on the one hand, and Pacific Ethanol Stockton, LLC, and Pacific Ethanol Magic Valley, LLC, on the other, entered into binding and valid contracts. Certain of those contracts contained warranty obligations on the part of Delta-T, which were intended to warrant the work performed by Delta-T.

84. Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC fully performed their obligations under the contracts or were otherwise excused from performance.

85. Delta-T breached its warranty obligations under the terms of the contracts by providing faulty or deficient engineering work at the ethanol plants in (i) Burley, Idaho, and (ii) Stockton, California. By its breach, Delta-T created significant additional costs to Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC.

86. As a direct result of Delta-T's breach of warranty, Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC have suffered damages of not less than $2,000,000, with the exact amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC Against Delta-T)

87. The Debtors repeat and reallege the allegations set forth above.

88. Delta-T failed to perform work for the benefit of Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC, to the standards that are reasonably accepted in the industry.

89. Delta-T provided faulty or deficient engineering work at the ethanol plants in (i) Burley, Idaho, and (ii) Stockton, California.

90. As a direct result of its substandard performance, Delta-T caused significant damages to Pacific Ethanol Stockton, LLC and Pacific Ethanol Magic Valley, LLC, of not less than $2,000,000, with the exact amount to be established at trial.

## SIXTH CAUSE OF ACTION

### (All Debtors Against Delta-T)

91. The Debtors repeat and reallege the allegations set forth above.

92. The Debtors hereby object, pursuant to § 502 of the Bankruptcy Code and Federal Rule 3007, to any claim filed, or to be filed, by Delta-T in the bankruptcy cases. The Debtors reserve any and all rights and defenses against any such claims asserted by Delta-T.

**WHEREFORE,** based upon all of the foregoing, the Debtors respectfully request that this Court:

(i) upon the first cause of action, enter an order staying the Virginia Litigation and the AAA Arbitration until the later of (a) adjudication of the causes of action asserted by the Debtors against Delta-T set forth herein, (b) confirmation of any plan of reorganization in these bankruptcy cases, and (c) further order of this Court;

(ii) upon the second cause of action, enter an order staying the Minnesota Litigation, OneSource Litigation and the GEA Westfalia Litigation until confirmation of any plan of reorganization in these bankruptcy cases or further order of this Court;

(iii) upon the third, fourth, and fifth causes of action, award the Debtors, or certain of them, damages arising from Delta-T's substandard work on the Debtors' ethanol plants; and

(iv) grant the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
July 15, 2009

Respectfully submitted,

*[signature]*

Steven M. Yoder (DE Bar No. 3885)
Jeremy W. Ryan (DE Bar No. 4057)
Etta R. Wolfe (DE Bar No. 4164)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

-and-

Lawrence C. Gottlieb (LB 2565)
Richard S. Kanowitz (RK 0677)
COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 479-6000
(212) 479-6275 (Facsimile)

*Counsel for Debtors and Debtors in Possession*

## DECLARATION

CHRISTOPHER WRIGHT, declares under penalty of perjury that:

I have read the annexed complaint. The facts alleged in the complaint are true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters, I believe them to be true. The grounds of my belief as to all matters not stated upon my knowledge is the review of the Debtors' records and other public documents pertaining to this matter, and conversations with employees and agents of the Debtors. The reason I make this declaration is that the Debtors are each limited liability companies, and I am the Vive-President of each Debtor.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: July 15, 2009

/s/ Christopher Wright